# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **TIARE TECHNOLOGY, INC.,**<br>v.<br>**LOWE'S HOME CENTERS, LLC** | **Civil Action No. 2:22-cv-00182-JRG (Lead Case)** |
| **TIARE TECHNOLOGY, INC.,**<br>v.<br>**LOWE'S HOME CENTERS, LLC** | **Civil Action No. 2:22-cv-00180-JRG (Member Case)** |

## DEFENDANT LOWE'S HOME CENTERS, LLC'S MOTION TO DISMISS TIARE TECHNOLOGY, INC.'S FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page #**

I. INTRODUCTION .................................................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................................ 1

III. LEGAL STANDARD ............................................................................................................ 2

IV. ARGUMENT ......................................................................................................................... 4

    A. The Court Should Dismiss Tiare's Claim of Infringement Under the '729 Patent Because the Patent Is Patent Ineligible ................................................................... 4

        1. The '729 Patent Fails to Survive Step One of *Alice* ......................................... 4

        2. The '729 Patent Lacks an Inventive Concept ..................................................... 6

    B. The Court Should Dismiss Tiare's Claim of Infringement Under the '414 Patent Because the Patent Is Patent Ineligible ................................................................... 9

        1. The '414 Patent Fails to Survive Step One of Alice ......................................... 9

        2. The '414 Patent Lacks an Inventive Concept ................................................... 10

    C. The Court Should Dismiss Tiare's Claim of Infringement Under the '224 Patent Because the Patent Is Patent Ineligible ................................................................. 11

        1. The '224 Patent Fails to Survive Step One of Alice ....................................... 11

        2. The '224 Patent Lacks an Inventive Concept ................................................. 13

V. CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013) ................................................................................................. 6

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
   2015 WL 3757497 (W.D. Tex. June 12, 2015) ......................................................................... 4

*Alice Corp. v. CLS Bank Int'l*,
   573 U.S. 208 (2014) ........................................................................................................ passim

*Apple Inc. v. Ameranth, Inc.*,
   842 F.3d 1229 (Fed. Cir. 2016) ................................................................................................. 3

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) ................................................................................................. 2

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ............................................................................................................. 2, 4

*BSG Tech LLC v. BuySeasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) ............................................................................................... 13

*Cleveland Clinic Found. v. True Health Diags.*,
   859 F.3d 1352 (Fed. Cir. 2017) ................................................................................................. 2

*Content Extraction v. Wells Fargo Bank*,
   776 F.3d 1343 (Fed. Cir. 2014) ................................................................................................. 7

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ................................................................................................. 3

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
   839 F.3d 1089 (Fed. Cir. 2016) ................................................................................................. 7

*I/P Engine, Inc. v. AOL, Inc.*,
   576 F. App'x 982 (Fed. Cir. 2014) ............................................................................................ 2

*Intell. Ventures I, LLC v. Capital One Fin. Corp.*,
   850 F.3d 1332 (Fed. Cir. 2017) ................................................................................... 6, 10, 13

*KomBea Corp. v. Noguar LC*,
   2014 WL 7359049 (D. Utah Dec. 23, 2014) ............................................................................ 4

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
　566 U.S. 66 (2012) ................................................................................................................3

*Morales v. Square, Inc.*,
　75 F. Supp. 3d 716 (W.D. Tex. 2014) .....................................................................................4

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
　811 F.3d 1314 (Fed. Cir. 2016) ...........................................................................................4, 5

*Move, Inc. v. Real Est. All. Ltd.*,
　2018 WL 656377 (Fed. Cir. Feb. 1, 2018) ..............................................................................6

*MySpace, Inc. v. Graphon Corp.*,
　672 F.3d 1250 (Fed. Cir. 2012) ...............................................................................................8

*Planet Bingo, LLC v. VKGS LLC*,
　576 F. App'x 1005 (Fed. Cir. 2014) ................................................................................11, 13

*RecogniCorp v. Nintendo Co.*,
　855 F.3d 1322 (Fed. Cir. 2017) ...............................................................................................6

*Symantec Corp. v. Zscaler, Inc.*,
　2018 WL 3537201 (N.D. Cal. July 23, 2018) .........................................................................8

*Synopsys, Inc. v. Mentor Graphics Corp.*,
　839 F.3d 1138 (Fed. Cir. 2016) ...............................................................................................3

*W. View Res., LLC v. Audi AG*,
　685 F. App'x 923 (Fed. Cir. 2017) ..........................................................................................4

**Statutes**

35 U.S.C. § 101 ............................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..........................................................................................................1, 4

**I.    INTRODUCTION**

Plaintiff Tiare Technology, Inc. ("Tiare") filed this lawsuit against Defendant Lowe's Home Centers, LLC ("Lowe's") alleging infringement of three related patents. Although each of Tiare's claims is lacking, which Lowe's will show on the merits in this case, the Court should dismiss the patent infringement claims on their face according to Federal Rule of Civil Procedure 12(b)(6).

Specifically, Lowe's requests that the Court dismiss the patent infringement claims pursuant to 35 U.S.C. § 101. The claims of the asserted patents are patent ineligible because they are directed to the abstract ideas of conducting mobile orders and tracking. The asserted patents do not solve any unique technological problem to overcome their abstract ideas, so under the Supreme Court's precedent established in *Alice Corp. v. CLS Bank International*, the asserted patents are invalid for lack of patentable subject matter. 573 U.S. 208 (2014). Thus, the Court should dismiss the Complaint pursuant to Rule 12(b)(6).

**II.    FACTUAL BACKGROUND**

Tiare filed its Amended Complaint on August 2, 2022, alleging Lowe's infringes the three related patents: U.S. Patent Nos. 8,682,729 (the "'729 Patent"), 10,157,414 (the "'414 Patent"), and 11,195,224 (the "'224 Patent") (collectively, the "Asserted Patents"). Dkt. No. 9. Each of the Asserted Patents is a direct or indirect continuation of U.S. Patent No. 7,945,477 and has an identical specification. Tiare alleges infringement of at least claim 1 of the '729 Patent, at least claim 8 of the '414 Patent, and at least claim 10 of the '224 Patent. Each of these claims is an independent claim.

**The '729 Patent.** The '729 Patent is a continuation of U.S. Patent Application No. 13/073,368, which is a continuation of U.S. Patent No. 7,945,477. Dkt. No. 11-1. The '729

1

Patent includes three independent claims. *Id.* Tiare alleges that Lowe's practices all the limitations of claim 1, which is representative of the other patent claims.

**The '414 Patent.** The '414 Patent is a continuation of U.S. Patent Application No. 14/317,347, which is a continuation of U.S. Patent No. 9,202,244, which is a continuation of U.S. Patent No. 7,945,477. Dkt. No. 11-2. The '414 Patent includes three independent claims. *Id.* Tiare alleges that Lowe's practices all the limitations of claim 8, which is representative of the other patent claims.

**The '224 Patent.** The '224 Patent is a continuation of the '414 Patent. Dkt. No. 11-3. The '224 Patent includes three independent claims. *Id.* Tiare alleges that Lowe's practices all the limitations of claim 10, which is representative of the other patent claims.

### III.   LEGAL STANDARD

Patent eligibility under 35 U.S.C. § 101 is a question of law. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). It is a "threshold" issue that the Court should consider before other conditions of patentability. *See Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." *Cleveland Clinic Found. v. True Health Diags.*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). Early resolution serves to "spare both litigants and courts years of needless litigation." *I/P Engine, Inc. v. AOL, Inc.*, 576 F. App'x 982, 996 (Fed. Cir. 2014).

Section 101 of the Patent Act defines eligibility and provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent." 35 U.S.C. § 101. In construing the scope of this section, the Supreme Court has recognized certain exceptions: "[l]aw of nature,

natural phenomena, and **abstract ideas** are not patentable." *Alice*, 573 U.S. at 216 (emphasis added) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576 (2013)). The abstract-ideas exception includes mental processes and traditional ways of analyzing information, fundamental economic practices long prevalent in our system of commerce, long-standing commercial practices, and methods of organizing human activity. *Id.* at 219; *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011).

Following *Alice*, courts apply a two-step framework to decide whether claims are patent eligible. The first step is to "determine whether the claims at issue are directed to . . . patent-ineligible concepts," such as abstract ideas. *Alice*, 573 U.S. at 218. "The § 101 inquiry must focus on the language of the Asserted Claims themselves." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) (internal citations omitted). For computer-based claims, this first step asks whether the claims focus on a "specific means or method that improves the relevant technology," which may pass muster under § 101, or on a "result or effect that itself is the abstract idea and merely invoke generic processes and machinery," which cannot. *Apple Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (internal citations omitted). If the claims are directed to an abstract idea, then the inquiry proceeds to a second step. In step two, the court must consider the elements of the claim both individually and as an ordered combination to determine whether the claims contain an "inventive concept" sufficient to "transform the nature of the claim into a patent-eligible application." *Alice*, 573 U.S. at 218. To survive the second step, a claim must include "additional features" ensuring that the claim does "more than simply stat[e] the abstract idea while adding the words 'apply it.'" *Id.* at 221 (citing *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 72 (2012)). A claim that only adds "well-understood, routine, conventional activity" does not constitute an "inventive concept." *Mayo*, 566 U.S. at 73.

IV.   **ARGUMENT**

Taking the allegations in Tiare's Complaint as true, the Court should dismiss the Complaint because the asserted claims of the Asserted Patents are directed to an abstract idea. Each of the claims in the Asserted Patents is directed to and relates to the business practice of making a product or service order through an agent, and nothing in the asserted claims of the Asserted Patents shows an inventive concept. Thus, the Court should dismiss the claims under Rule 12(b)(6). *See Alice*, 573 U.S. at 219; *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 2015 WL 3757497, at *5 (W.D. Tex. June 12, 2015).

  A.   **The Court Should Dismiss Tiare's Claim of Infringement Under the '729 Patent Because the Patent Is Patent Ineligible**

    1.   **The '729 Patent Fails to Survive Step One of *Alice***

*First*, claim 1 of the '729 Patent relates to conducting a mobile order—an abstract idea. Several courts have held that well-known methods and business practices involving the mere organization of human activity, such as conducting a mobile order, are not patentable. *See Alice*, 573 U.S. at 219 (mitigating settlement risk); *Bilski v. Kappos*, 561 U.S. 593, 611–12 (2010) (hedging); *W. View Res., LLC v. Audi AG*, 685 F. App'x 923 (Fed. Cir. 2017) (receiving or collecting data queries, analyzing the data query, retrieving and processing the information constituting a response to the initial data query, and generating a visual response to the initial data query); *Morales v. Square, Inc.*, 75 F. Supp. 3d 716, 724–26 (W.D. Tex. 2014) ("[A] claim is directed to an abstract idea when it describes a fundamental concept or longstanding practice."); *KomBea Corp. v. Noguar LC*, 2014 WL 7359049, at *1, *7 (D. Utah Dec. 23, 2014) (automating telemarketing calls personalized to a potential customer).

In *Mortgage Grader, Inc. v. First Choice Loan Services Inc.*, the Federal Circuit explained that "meritorious" § 101 defenses after *Alice* are "most likely to occur with respect to patent claims

4

that involve implementations of economic arrangements using generic computer technology." 811 F.3d 1314, 1322 (Fed. Cir. 2016). Like *Mortgage Grader*, the '729 Patent's claims are directed to an "economic arrangement" implemented using "generic computer technology" for mobile ordering. For example, a human purchase agent could perform each of the steps in the claimed elements of independent claim 1, showing that the claims are directed to the fundamental economic practice of conducting a mobile order and providing information about said order:

| **Claim 1** | **Purchase Agent** |
|---|---|
| A method of using a wireless patron unit within a venue and within a vicinity of the venue, the method comprising: | A purchase agent. |
| providing at least one patron with a wireless patron unit by either permitting the at least one patron to temporarily use a venue-owned wireless patron unit that includes at least one venue specific application program, or by providing at least one venue specific application program to the at least one patron for downloading into a patron owned wireless communication device that can be used during the at least one patron's visit to the venue; | The purchase agent provides a patron with venue-specific information for a patron's visit to the venue over the telephone. |
| connecting the wireless patron unit to a server enabling communication between the wireless patron unit and the server; | The purchase agent acts as an intermediary between the patron and a vendor. |
| entering a patron order for at least one item or service provided by the venue into the wireless patron unit; | The purchase agent orders at least one item or service provided by the vendor on behalf of the patron. |
| determining a current location of the wireless patron unit; | The purchase agent calls the patron requesting their location. |
| updating a status of the patron order, and the current location of the wireless patron unit when the patron moves to a different location, on the wireless patron unit; and | The purchase agent calls the patron, notifies the patron of the status of the order, and requests the patron's location. |

| | |
|---|---|
| displaying the patron order on a display of the wireless patron unit. | The purchase agent shows the patron a card displaying the order. |

The asserted claims of the '729 Patent are also directed to an abstract idea because they do not convey a specific technological improvement of computer functionality. Indeed, the claims are not directed to technology at all. Instead, they refer to a nontechnical method of conducting a mobile-phone order implemented on a generic computer. *See, e.g.*, Dkt. No. 11-1, Claim 1 ("[a] method of using a wireless patron unit"). The dependent claims are similarly abstract. *See* Dkt. No. 11-1 at 29–30. The claims focus on the abstract idea of conducting a mobile order and providing information about said order, and not improving the functionality of a computer. Such a method of organizing human activity is much like other abstract ideas found to be patent ineligible. *See Move, Inc. v. Real Est. All. Ltd.*, 2018 WL 656377, at *3–4 (Fed. Cir. Feb. 1, 2018) (collecting and organizing information about real-estate properties and displaying this information on a digital map). Limiting the '729 Patent's alleged invention to a particular technological environment does "not make [its] abstract concept any less abstract under step one." *Intell. Ventures I, LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017).

Thus, for these reasons, the Court should find that the claims of the '729 Patent are directed to the abstract idea of mobile ordering and fail step one of the *Alice* test.

### 2. The '729 Patent Lacks an Inventive Concept

*Second*, the asserted claims of the '729 Patent lack an inventive concept. The second step in the *Alice* analysis requires the Court to determine whether the claims contain "an inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 573 U.S. at 221 (internal citations and quotations omitted). "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp v. Nintendo Co.*, 855 F.3d 1322, 1326–27 (Fed. Cir. 2017); *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d

6

1336, 1345 (Fed. Cir. 2013). Nothing in the asserted claims saves the claims from the second step of *Alice*.

Here, the asserted claims do not recite any inventive concept but rather recite the performance of the abstract idea using previously invented generic computer, telephone, and internet features such as "a wireless patron unit," "at least one venue specific application program," "a patron owned wireless communication device," "a server," "connecting . . . to a server," "entering a patron order," "determining a current location of the wireless patron unit," "updating a status of the patron order," and "displaying the patron order." *See* Dkt. No. 11-1 at 29. These are nothing more than generic descriptions of computer components and functions that do not rise to the level of an inventive concept, either individually or as an ordered combination. *See Content Extraction v. Wells Fargo Bank*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 221 (a computer in a computer-implemented invention "must involve more than performance of 'well-understood, routine [and] conventional activities previously known to the industry'" to be meaningful)). Courts have repeatedly rejected claims as non-inventive that recite generic components. *See, e.g.*, *Alice*, 573 U.S. at 221–26 (rejecting argument that recitation of a "data processing system," "communications controller," or "data storage unit" conferred patentability); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1096 (Fed. Cir. 2016) ("non-transitory computer-readable medium" and "microprocessor"). Similarly, none of the generic computer components that the '729 Patent's claims recite transforms the abstract idea into "something more." *See Alice*, 573 U.S. at 216.

The specification of the '729 Patent confirms that such features are generic and fail to provide an inventive concept. For example, the specification describes the "portable patron units" generically as "mobile wireless devices that include interactive display screens." Dkt. No. 11-1 at

7

3:1–2. Similarly, the specification states that the "application program" "may be described in the general context of computer-executable instructions, such as program modules, being executed by a computer." *Id.* at 12:41–43.

Tiare's unsubstantiated allegation that conventional systems had limitations because they were unable to track location and argument that the concept at its core is a solution of electronic location tracking lacks merit. Dkt. No. 9 at 8. Indeed, the '729 Patent specification does not disclose any more than generic and already-known methods of location tracking. The specification states that portable patron devices may be located "based on signals emitted by its control unit" and states that, for example, it "may use 802.11 location finding technology to determine locations" or that "[a]lternatively, global positioning technology could also be used to track the location of portable patron units." Dkt. No. 11-1 at 14:57–15:12. The '729 Patent does not disclose an inventive way of location tracking but merely adopts conventional and generic prior art. The specification contains no detailed technical description of "location tracking" or a new way to implement it. Further, the Federal Circuit explained that "[a]n inventor is entitled to claim in a patent what he has invented, but no more." *MySpace, Inc. v. Graphon Corp.*, 672 F.3d 1250, 1256 (Fed. Cir. 2012). If something is not detailed in the specification, it cannot be something that the patentee invented and cannot serve as an inventive concept. *See id.*; *Alice*, 573 U.S. at 220–21; *see also Symantec Corp. v. Zscaler, Inc.*, 2018 WL 3537201, at *3 (N.D. Cal. July 23, 2018) (collecting cases finding patents ineligible where the specification is silent on the alleged inventive concept). Because the specification of the '729 Patent discloses no new algorithm, design, or means of implementing "location tracking" aside from generic prior art, it must necessarily involve only conventional and routine steps of the type that cannot confer patent eligibility.

In sum, the elements of the claims of the '729 Patent include no inventive concept that would render any of the claims patent eligible.

**B.     The Court Should Dismiss Tiare's Claim of Infringement Under the '414 Patent Because the Patent Is Patent Ineligible**

**1.     The '414 Patent Fails to Survive Step One of *Alice***

*First*, like the '729 Patent, the '414 Patent relates to conducting a mobile order, which is a non-patentable abstract idea. Like the '729 Patent, a human purchase agent could perform each of the steps recited in independent claim 8 of the '414 Patent, showing that the claims are directed to nothing more than a fundamental economic practice:

| Claim 8 | Purchase Agent |
|---|---|
| A computer-implemented method executed by one or more processors, the method comprising: | A purchase agent. |
| providing, over a wireless communications channel and by the one or more processors, a venue-specific application to a mobile computing device; | The purchase agent provides a patron venue-specific information. |
| communicating, by the one or more processors, with the mobile computing device over the wireless communication channel to authenticate, based on a security protocol, a user of the venue-specific application on the mobile computing device; | The purchase agent asks on a call with the patron for a verifying password to confirm the patron's identity. |
| receiving, by the one or more processors, location information from the mobile computing device; | The purchase agent on the call with the patron receives information regarding the patron's location. |
| determining, by the one or more processors, a location of the mobile computing device at a first time based on the location information; | The purchase agent knows the patron's location based on the information the purchase agent received on the call. |
| mapping, by the one or more processors, the location to a region that is associated with a venue; | The purchase agent looks at a map containing the patron's location and maps the location of a vendor. |

9

| | |
|---|---|
| receiving, from the mobile computing device, order information for the venue that indicates a user selection of an order option from the venue-specific application; | The purchase agent on the call with the patron receives the patron's order information for the specific venue. |
| receiving, by the one or more processors, updated location information from the mobile computing device; and | The purchase agent calls the client to ask their new location. |
| determining, by the one or more processors, an updated location of the mobile computing device at a second time based on the updated location information. | The purchase agent knows the patron's updated location based on the information received on the phone call. |

The dependent claims are similarly abstract. *See* Dkt. No. 11-2 at 29–30. Additionally, the asserted claims of the '414 Patent are directed to an abstract idea because they do not convey a specific technological improvement to computer functionality. Indeed, the claims are not directed to technology at all. Instead, they refer to a nontechnical method of conducting a mobile order on a generic computer. *See, e.g.*, Dkt. No. 11-2, Claim 8 ("[a] computer-implemented method"). The claims focus on the abstract idea of conducting a mobile order and not on improving the functionality of a computer. Limiting the '414 Patent's alleged invention to a particular technological environment does "not make [its] abstract concept any less abstract under step one." *Capital One*, 850 F.3d at 1340.

Thus, for these reasons, the Court should find that the claims of the '414 Patent are directed to the abstract idea of conducting a mobile order and fail step one of the *Alice* test.

### 2. The '414 Patent Lacks an Inventive Concept

*Second*, the asserted claims of the '414 Patent lack an inventive concept. Like the '729 Patent, the claims merely recite the performance of the abstract idea of conducting a mobile order using generic computer, telephone, and internet features such as "application," "authenticat[ion]," "receiving," "communicating," and "location information." Dkt. No. 11-2, Claim 8. As discussed

10

above, these are nothing more than generic descriptions of computer components and functions that do not rise to the level of an inventive concept, either individually or as an ordered combination. *See supra* § IV(A)(2).

As discussed above regarding the '729 Patent, the features in the '414 Patent are generic and fail to provide any inventive concept. "Processors," "wireless communications channel," and "mobile computing device" are all generic components with no disclosure of inventive concepts for them.

For the same reasons discussed above in the '729 Patent, the elements of the claims of the '414 Patent include no inventive concept that would render any of the claims patent eligible.

### C. The Court Should Dismiss Tiare's Claim of Infringement Under the '224 Patent Because the Patent Is Patent Ineligible

#### 1. The '224 Patent Fails to Survive Step One of *Alice*

The claims of the '224 Patent are also directed to an abstract idea. Like the previous two patents discussed above, the '224 Patent also relates to conducting mobile orders, while claim 10 more specifically relates to tracking the location of mobile devices. "[N]ot only can these steps be 'carried out in existing computers long in use,' but they can also" be performed by a traditional emergency dispatcher. *See Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1008 (Fed. Cir. 2014). For example, a human dispatcher could perform the steps of the claimed elements of claim 10 of the '224 Patent:

| Claim 10 | Emergency Dispatcher |
|---|---|
| A system for locating electronic devices, the system comprising one or more processors and one or more data stores coupled to the one or more processors having instructions stored thereon which, when executed by the one or more processors, causes the one or more processors to perform operations comprising: | An emergency dispatcher. |

11

| | |
|---|---|
| providing, over one or more wireless channels, a venue specific application to each of a plurality of mobile electronic devices; | The emergency dispatcher provides radios to each of a plurality of emergency services crews. |
| receiving, from each of the plurality of mobile electronic devices, first location information through the venue specific application of each respective mobile electronic device; | The emergency dispatcher hears the first location information of the plurality of emergency services crews from each of the emergency services crews' radios. |
| determining first locations of each of the plurality of mobile electronic devices based on the first location information; | The emergency dispatcher determines the first locations of the plurality of emergency services crews based on the first location information. |
| receiving, over the one or more wireless channels second location information from each of the mobile electronic devices; | The emergency dispatcher hears the second location information from each of the emergency services crews' radios. |
| determining updated locations of each of the mobile electronic devices based on the second location information; | The emergency dispatcher determines updated locations of each of the emergency services crews based on the second location information. |
| receiving, from a particular one of the mobile electronic devices, order information for a venue associated with the venue-specific application; and | The emergency dispatcher receives an order for additional crewmembers or equipment from a department associated with the emergency radio line. |
| in response to receiving the order information, sending, to a computing system associated with the venue for display in a graphical user interface, data indicating the updated location of the particular one of the plurality of mobile electronic devices. | In response to receiving the order, the emergency dispatcher enters into the dispatcher's computer for display in a graphical user interface data indicating the updated location of the particular one of the emergency services crews. |

The dependent claims are similarly abstract. *See* Dkt. No. 11-3. Additionally, the asserted claims of the '224 Patent are directed to an abstract idea because they do not convey a specific technological improvement to computer functionality. Indeed, the claims are not directed to technology at all. Instead, they refer to a nontechnical method of locating mobile devices: location information is received, and location is determined from location information, with no technical details, algorithms, or processes provided. *See, e.g.*, Dkt. No. 11-3, Claim 8 ("[a] system for

12

locating electronic devices"). The claims focus on the abstract idea of tracking location and not on improving the functionality of a computer. Limiting the '224 Patent's alleged invention to a particular technological environment does "not make [its] abstract concept any less abstract under step one." *Capital One*, 850 F.3d at 1340.

Thus, for these reasons, the Court should find that the claims of the '224 Patent are directed to the abstract idea of conducting a mobile order and fail step one of the *Alice* test.

### 2. The '224 Patent Lacks an Inventive Concept

The claims of the '224 Patent do not provide an inventive concept. Like the two patents above, the claims recite the performance of the abstract idea using generic computer, telephone, and internet functions such as "providing," "receiving," "determining," and "sending." *See Planet Bingo*, 576 F. App'x at 1008. As discussed above, these are nothing more than generic descriptions of computer components and functions that do not rise to the level of an inventive concept, either individually or as an ordered combination. *See supra* § IV(A)(2). A patent's recitation of a computer amounts to a mere instruction to implement an abstract idea on a computer; that addition cannot impart patent eligibility. *Alice*, 573 U.S. at 223.

Tracking locations of mobile devices cannot supply an inventive concept, because this itself is abstract. *See BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018). Humans have been tracking by creating, updating, and maintaining records of sightings since the dawn of man. Merely displaying the record of locations on a generic computer is not inventive.

As discussed above regarding the '729 Patent and the '414 Patent, the features recited in the '224 Patent are generic and fail to provide an inventive concept. "Processors," "data stores," "wireless communications channels," and "mobile electronic devices" are all generic components with no disclosure of inventive concepts for them.

13

For the same reasons discussed above regarding the '729 Patent and the '414 Patent, the elements of the claims of the '224 Patent include no inventive concept that would render any of the claims patent eligible.

## V. CONCLUSION

For these reasons, Lowe's requests that the Court grant this Motion and dismiss Tiare's patent infringement claims as patent ineligible under 35 U.S.C. § 101.

Dated: August 23, 2022                                          Respectfully submitted,

                                                           **WINSTON & STRAWN LLP**

By:  */s/ Rex A. Mann*
      Rex A. Mann
      State Bar No. 24075509
      rmann@winston.com
      Ahtoosa A. Dale
      State Bar No. 24101443
      adale@winston.com
      Steven R. Laxton
      State Bar No. 24120639
      slaxton@winston.com
      2121 N. Pearl Street, Suite 900
      Dallas, TX 75201
      Telephone: (214) 453-6500
      Facsimile: (214) 453-6400

      *Attorneys for Defendant*
      *Lowe's Home Centers, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2022, a true and correct copy of the foregoing document was filed via ECF and served on all counsel of record registered to receive service through such means.

/s/ Rex A. Mann
Rex A. Mann

## CERTIFICATE OF COMPLIANCE WITH THE COURT'S 35 U.S.C. § 101 MOTION PRACTICE ORDER

___X___ The parties **agree** that prior claim construction is not needed to inform the Court's analysis as to patentability.

_____ The parties **disagree** on whether prior claim construction is not needed to inform the Court's analysis as to patentability.

/s/ Rex A. Mann
Rex A. Mann
