IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

TIARE TECHNOLOGY, INC.,           §
                                  §
          *Plaintiff,*            §
                                  §
v.                                §          Case No. 2:22-cv-0182-JRG-RSP
                                  §                  (Lead Case)
WHATABURGER RESTAURANTS, LLC,     §
                                  §
          *Defendant*.            §
                                  §

**REPORT AND RECOMMENDATION**

Before the Court, defendants Panera Bread Company, Panera, LLC (collectively "Panera"),

and Lowes Home Centers, LLC move to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6) asserting that the patents in suit claim ineligible subject matter under 35 U.S.C. § 101.

**Dkt. Nos. 19 & 30**. The motions have been fully briefed. For the reasons that follow, both motions

should be **DENIED**.

I.      **Background**

Plaintiff Tiare Technology, Inc. filed suit alleging infringement of at least claim 1 of U.S.

Patent No. 8,682,729 (the "'729 patent"), at least claim 8 of U.S. Patent No. 10,157,414 (the "'414

patent"), and at least claim 10 of U.S. Patent No. 11,195,224 (the "'224 patent"). *Tiare Technology,*

*Inc. v. Panera*, Case No. 2:22-cv-0181, Dkt. No. 1 ¶¶ 55-115; *Tiare Technology, Inc. v. Lowe's*

*Companies, Inc., et al.*, Case No. 2:22-cv-0180, Dkt. No. 9 ¶¶ 55-115. Because the asserted claims

are the same across all complaints in this consolidated action, the Court will generally refer to the

complaint of lead case *Tiare Technologies, Inc. v. Whataburger Restaurants, LLC*, Case No. 2:22-

cv-0182, Dkt. No. 1.

The patents in suit issued from continuation applications claiming priority to the same 2002

parent application and share a common specification. The patents and the claims therein are generally directed to a method or system using an unconventional type of distributed architecture for "real-time electronic tracking of distributed mobile computing devices for placing an order with a venue through a venue-specific application on a wireless unit and then providing the venue with location data of the wireless unit as a proxy for the patron's location. When the patron enters an order for goods or services through the venue-specific application, the patron's location is tracked so that a venue representative may more easily locate the patron to render the goods or services ordered. '721 patent, 2:64-3:14; '414 patent, 2:66-3:16; '224 patent, 2:66-3:16.

## II.    Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is "a purely procedural question not pertaining to patent law," and so the law of the Fifth Circuit controls. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007). When considering such motions, this Court "accepts all well-pleaded facts as true, views them in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor." *Johnson v. BOKF Nat'l Ass'n*, 15 F.4th 356, 361 (5th Cir. 2021).  The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Rule 12(b)(6) requires that a complaint contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  To meet this factual plausibility standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged," based on "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star*, 594 F.3d at 387 (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). Said another way, the plausibility standard is met when the complaint pleads "enough fact to raise a reasonable expectation that discovery will reveal evidence" in support of the alleged claims. *Twombly*, 550 U.S. at 556. "The factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).' " *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555).

## III.     Representative Nature of the Claims

The movants bear the burden of showing that the claims of each patent addressed by the motion are representative of the remaining claims within each patent. "The initial burden of persuasion rests on the defendant to identify a rationale for treating a given claim or claims as representative of other asserted claims." *PPS Data, LLC v. Jack Henry & Assocs., Inc.*, 404 F. Supp. 3d 1021, 1030 (E.D. Tex. 2019). "In all cases, the representativeness inquiry must be 'directly tethered to the claim language.' " *Id*. at 1030 (quoting *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019)). "Further, courts should not treat a claim as 'representative simply because it is an independent claim,'" *id* at 1031 (citing *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018)), and "absent a case-specific justification, courts should generally not find a claim in one patent representative of other claims in other patents," *id.* (citing *Novartis Pharm. Corp. v. Breckenridge Pharm. Inc.*, 909 F.3d 1355, 1362 (Fed. Cir. 2018)). "In summary, to meet its burden, the defendant must conduct an analysis tethered to the claim language, to show

that there are no legally relevant distinctions between the claim identified as representative and the remaining asserted claims." *Id.* Upon a showing of representativeness, the burden shifts to the plaintiff to demonstrate a distinctive significance between claims. *Id.* (citing *Berkheimer*, 881 F.3d at 1365, and according with *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1377 (Fed. Cir. 2018)). Because of due process concerns:

> in close cases, courts should err on the side of finding a claim is not representative, because a mistake has constitutional consequences. An incorrect decision finding a claim representative—when in fact, it is not—is not only a trespass upon the statutory rights of the patentee, but works against the rights secured to all Americans by the Constitution itself.

*Id.* at 1033 (citing U.S. Const. amend. 5; U.S. Const. amend. 14 § 1).

Lowes summarily asserts that claim 1 of the '792 patent, claim 8 of the '414 patent, and claim 10 of the '224 patent are representative of the remaining claims of each patent without any analysis or reference to the limitations of the remaining claims. Dkt. No. 30 pp 1-2 ("Tiare alleges that Lowe's practices all the limitations of claim 1 [of the '792 patent], which is representative of the other patent claims[,] … that Lowe's practices all the limitations of claim 8 [of the '414 patent], which is representative of the other patent claims[, and] … that Lowe's practices all the limitations of claim 10 [of the '224 patent], which is representative of the other patent claims."). This is clearly insufficient to establish representativeness.

Panera's argument for representativeness first focuses on the independent claims of each asserted patent beyond that which is "at least" asserted. Dkt. No. 19 p 5. Specifically, Panera claims:

> [T]he remaining independent claims of the 729 Patent relate to updating the status order (see claims 19 and 20 of the 729 Patent), the remaining claims of the 414 Patent relate to authenticating user information and/or mapping the location (see claims 1 and 15 of the 414 Patent), and the remaining claims of the 224 Patent relate to displaying location information on a graphical user interface (see claim 1 of the 224 Patent).

*Id.* Such a conclusory analysis is not tethered to the language of the claims and thus fails to show the absence of legally relevant distinctions between the representative claim and the remaining asserted claims. *PPS Data*, 404 F.Supp.3d 1031; see also *id.* at 1033 ("courts should err on the side of finding a claim is not representative"). Panera then shifts to the dependent claims, but similarly fails to tether claim language to show the absence of legally relevant distinctions. Dkt. No. 19 p 5 ("They merely add conventional activity claimed in functional terms, like using the Internet or a cellular network for the claimed 'network,' or displaying the patron's previous orders. These are at best 'insignificant post-solution activities.' ") (citing *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed. Cir. 2016)). Moreover, when arguing that the location monitoring and authentication limitations are directed to abstract concepts, Panera cites to only the '729 patent without showing representativeness of claims between patents. Dkt. No. 19 pp 10-11; *PPS Data*, 404 F. Supp. 3d at 1030 ("[A]bsent a case-specific justification, courts should generally not find a claim in one patent representative of other claims in other patents."). Such an analysis is insufficient to overcome due process concerns. *Id.* at 1031-32; see also *id.* at 1033 ("courts should err on the side of finding a claim is not representative").

## IV.    Eligibility

Pursuant to 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." "A claim falls outside § 101 where (1) it is directed to a patent-ineligible concept, *i.e.*, a law of nature, natural phenomenon, or abstract idea, and (2), if so, the particular elements of the claim, considered both individually and as an ordered combination, do not add enough to transform the nature of the claim into a patent-eligible application." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166–67 (Fed.

Cir. 2018) (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014)).

To determine whether a claim is directed to an eligible subject matter, the courts ask "what

the patent asserts to be the 'focus of the claimed advance over the prior art.' " *TecSec, Inc. v. Adobe*

*Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (quoting *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161,

1168 (Fed. Cir. 2019)). During this inquiry, the focus is on the claim language considered in the

light of the specification. *Id.* (quoting *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138,

1149 (Fed. Cir. 2016); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)). The

analysis must not indulge in "overgeneraliz[ations]" resulting in "abstractions" "untethered" from

the claim language. *Enfish*, 822 F.3d at 1337. Instead, the analysis "depends on an accurate

characterization of what the claims require and of what the patent asserts to be the claimed

advance. The accuracy of those characterizations is crucial" to the analysis. *TecSec*, 978 F.3d at

1294.

In cases involving improvements to computing technology and networks, the Federal

Circuit has relied upon two inquires: (1) "whether the focus of the claimed advance is on a solution

to a problem specifically arising in the realm of computer networks," and (2) "whether the claim

is properly characterized as identifying a specific improvement in computer capabilities or network

functionality, rather than only claiming a desirable result or function." *Id.* at 1293 (compiling

cases). It is insufficient for a patent to invoke a computer "merely as a tool" to execute an abstract

idea. *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F.3d 1303, 1306–07 (Fed. Cir. 2020) ("In

cases involving software innovations, this inquiry often turns on whether the claims focus on

specific asserted improvements in computer capabilities or instead on a process or system that

qualifies an abstract idea for which computers are invoked merely as a tool.") (citing *Customedia*

*Tech., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020), and *Finjan, Inc. v Blue*

*Coat Systems, Inc.*, 879 F.3d 1299, 1303(Fed. Cir. 2018)); *TecSec*, 978 F.3d at 1293 (compiling cases).

If a court determines at step one of the *Alice/Mayo* framework that the claims are directed to a patent ineligible concept, the court must consider step two. At step two the inquiry is "(1) whether each of the elements in the claimed product (apart from the natural laws [or abstract ideas] themselves) involve well-understood, routine, conventional activity previously engaged in by researchers in the field, and (2) whether all of the steps *as an ordered combination add* nothing to the laws of nature that is not already present when the steps are considered separately." *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1349 (Fed. Cir. 2019) (emphasis original, internal citations omitted).

"In other words, beyond" the ineligible concepts, "what elements in the claim may be regarded as the inventive concept?" *Id*. at 1349 (citations omitted). "These transformative elements must supply an 'inventive concept' that ensures the patent amounts to 'significantly more than a patent upon the ineligible concept itself.' " *BSG Tech LLC v. Buyseasons, Inc*., 899 F.3d 1281, 1289–90 (Fed. Cir. 2018) (citing *Alice*, 134 S.Ct. at 2355). "It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *Id*. at 1290. "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *Id.* at 1290-91. "Whether a combination of claim limitations supplies an inventive concept that renders a claim 'significantly more' than an abstract idea to which it is directed is a question of law." *Id.* at 1290.

The specification of the '729 Patent describes the invention as an improvement over

existing kiosks and staffed point of sale (POS) computer systems by providing an improved

network architecture. 1:25-3:16. Claim 1 reads:

> A method of using a wireless patron unit within a venue and within a vicinity of the venue, the method comprising:
> [(a)] providing at least one patron with a wireless patron unit by either permitting the at least one patron to temporarily use a venue-owned wireless patron unit that includes at least one venue specific application program, or by providing at least one venue specific application program to the at least one patron for downloading into a patron owned wireless communication device that can be used during the at least one patron's visit to the venue;
> [(b)] connecting the wireless patron unit to a server enabling communication between the wireless patron unit and the server;
> [(c)] entering a patron order for at least one item or service provided by the venue into the wireless patron unit;
> [(d)] determining a current location of the wireless patron unit;
> [(e)] updating a status of the patron order, and the current location of the wireless patron unit when the patron moves to a different location, on the wireless patron unit; and
> [(f)] displaying the patron order on a display of the wireless patron unit.

25:20-40 (limitation labels added for analysis). The method requires: (a) providing either a venue-

specific application for download on a wireless patron unit or a venue-owned unit with the

application, (b) connecting the wireless patron unit to a server, (c) entering an order for a good or

service offered by the venue into the wireless patron unit, (d) determining the current location of

the wireless patron unit, (e) updating the status of the order and updating the current location of

the wireless patron unit when the patron moves, and (f) displaying the order on the wireless patron

unit.  The specification goes into great detail in describing the architecture of the portable patron

unit, the server, and associated interfaces.

The '414 patent issued from a continuation application claiming priority to the same parent

as the '792 patent and shares a common specification. Claim 8 of the '414 patent reads:

> A computer-implemented method executed by one or more processors, the method comprising:
> [(a)] providing, over a wireless communications channel and by the one or more processors, a venue-specific application to a mobile computing device;
> [(b)] communicating, by the one or more processors, with the mobile computing

8

> device over the wireless communication channel to authenticate, based on a security protocol, a user of the venue-specific application on the mobile computing device;
> [(c)] receiving, by the one or more processors, location information from the mobile computing device;
> [(d)] determining, by the one or more processors, a location of the mobile computing device at a first time based on the location information;
> [(e)] mapping, by the one or more processors, the location to a region that is associated with a venue;
> [(f)] receiving, from the mobile computing device, order information for the venue that indicates a user selection of an order option from the venue-specific application;
> [(g)] receiving, by the one or more processors, updated location information from the mobile computing device; and
> [(h)] determining, by the one or more processors, an updated location of the mobile computing device at a second time based on the updated location information.

26:38-62 (limitation labels added for analysis). The method requires: (a) providing a venue-specific application to a mobile computing device, (b) communicating with the mobile device to authenticate a user of the device based on a security protocol, (c) receiving location data from the mobile device, (d) determining a first location of the device, (e) mapping the location of the device within a region of the venue, (f) receiving order information of a selection by a user, (g) receiving updated location information, and (h) determining an updated location.

The '224 patent issued from a continuation application claiming priority to the same parent as the '792 patent and shares a common specification. Claim 10 of the '224 patent reads:

> A system for locating electronic devices, the system comprising one or more processors and one or more data stores coupled to the one or more processors having instructions stored thereon which, when executed by the one or more processors, causes the one or more processors to perform operations comprising:
> [(a)] providing, over one or more wireless channels, a venue-specific application to each of a plurality of mobile electronic devices;
> [(b)] receiving, from each of the plurality of mobile electronic devices, first location information through the venue specific application of each respective mobile electronic device;
> [(c)] determining first locations of each of the plurality of mobile electronic devices based on the first location information;
> [(d)] receiving, over the one or more wireless channels, second location information from each of the mobile electronic devices;

9

> [(e)] determining updated locations of each of the mobile electronic devices based on the second location information;
>
> [(f)] receiving, from a particular one of the mobile electronic devices, order information for a venue associated with the venue-specific application; and
>
> [(g)] in response to receiving the order information, sending, to a computing system associated with the venue, for display in a graphical user interface, data indicating the updated location of the particular one of the plurality of mobile electronic devices.

27:11-40 (limitation labels added for analysis). The system requires: (a) wirelessly providing a venue-specific application to a plurality of mobile computing devices, (b) receiving first location data from each device through the venue-specific application, (c) determining the first locations of each device, (d) wirelessly receiving second location data from each device, (e) determining updated locations of each device from the second location data, (f) receiving order information for an associated venue from one device, and (g) in response to receiving order information, sending data to the venue's computing system for the graphical display of the updated location of the ordering device.

### A. Step One

Panera argues that claim 1 of the '729 Patent is directed to the combined abstract ideas of (1) location monitoring in light of *Tech. LLC v. ShoppersChoice.com*, 958 F.3d 1178, (2) authenticating a user's information in light of *Universal Secure Registry LLC v. Apple Inc.*, 10 F.41th 1342, 1346 (Fed. Cir. 2021), and *ShoppersChoice*, 958 F.3d at 1182, and (3) providing order status information in light of *ShoppersChoice*, 958 F.3d at 1180. Dkt. No. 19 pp 9-12. Lowes argues that claim 1 of the '729 Patent, claim 8 of the '414 patent, and claim 10 of the '224 patent are directed to the fundamental business practice of placing an order through the use a mobile device merely as a tool without improvement in light of *Mortgage Grader, Inc. v. First Choice Loan Services Inc.*, 811 F.3d 1314, 1322 (Fed. Cir. 2016).

As to location monitoring, the Federal Circuit in *ShoppersChoice* found that claim 11 of

U.S. Patent No. 9,373,261 included limitations directed to "monitoring the location of a mobile thing and notifying a party in advance of arrival of that mobile thing." *Id*. at 1181. As used in U.S. Patent No. 9,373,261, "mobile thing" is a carrier of a good or service such as a mail truck moving a parcel from a pickup location to a delivery location or a commuter bus traveling between various stops. 1:53-2:30 (additionally providing the examples of a school bus, overnight delivery service, and airplanes). In other words, claim 11 of U.S. Patent No. 9,373,261 includes limitations directed to monitoring the location of a carrier as it transports a good or service for a party and notifying the party in advance of arrival of the carrier to a predetermined stop such as a pickup or delivery location. *ShoppersChoice*, 958 F.3d at 1181. The Federal Circuit found these limitations to be abstract as "nothing more than the fundamental business practice of providing advance notification of the pickup or delivery of a mobile thing." *Id.*

Tiare opposes the application of *ShoppersChoice* arguing that the Federal Circuit found the claims to be drawn to computer code for performing the business process of notifying customers of the status of the delivery of goods and services. Dkt. No. 37 p 26. Tiare then argues that the asserted patents do not merely computerize a business process but recite a technical solution for tracking the location of a mobile computing device of a patron as a proxy to locate the patron. *Id.*

In addition, Panera argues that each step may be performed mentally and that the asserted claims are functional steps directed to an abstract result. Dkt. No. 19 pp 12-15. As to the former, Panera argues that location monitoring can be performed by a patron placing an order with a concierge, tracking the patron, and locating an ordering patron with a numbered flag. *Id*. at p 13 (steps 1, 3 and 6 of Tiare's brick and motor scenario). The Court is not persuaded that location monitoring as envisioned by the patents in suit equates to locating a patron with a numbered flag. The utility provided by the patents in suit eliminates the need for in-person ordering and tracks the

11

patron's location as the patron moves around the venue.

As to the latter, Panera argues that the limitations are directed to abstract ideas implemented by generic computers and processors. Dkt. No. 30 p 13-15. Tiare responds that the claims cover a new mobile ordering architecture for location monitoring with sufficient detail of how it works. Dkt. No. 37 pp 20-21.

While *ShoppersChoice* bears substantial similarities to the asserted patents, Tiare has shown that its patents contain significant improvements in network architecture, rendering step one a close question. "We need not answer this question, however, because even if we accept [Defendant's] narrow characterization of the [asserted] patent claims, the claims satisfy Alice step two" at least at this pleading stage. *Cosmokey Solutions GmbH & Co. KG v. Duo Security LLC*, 15 F.4th 1091, 1097 (Fed. Cir. 2021).

## B. Step Two

Panera and Lowes argue that the asserted claims lack an inventive concept because they are directed to abstract concepts achieved by generic and conventional devices without something significantly more to transform the claims into eligible concepts. Dkt. No. 19 pp 15-20; Dkt. No. 30 pp 6-9, 10-11, & 13-14. Tiare responds that the allegations of the complaint, when read in the light most favorable to the non-movant, establish that there at least genuine questions of fact as to whether the patents are well-understood, routine, and conventional. Dkt. No. 1 ¶¶ 37-48.

The second step of the Alice test is satisfied when the claim limitations "involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (citations omitted and cleaned up). "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact"

that "must be proven by clear and convincing evidence." *Id.* (citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011)). "Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Id.*

Tiare argues that "the claimed technology 'utilizes what was at the turn of the century an unconventional use of location tracking sensors integrated into mobile computing devices to determine the location of the mobile computing devices based on electronic signals (e.g., GPS, WiFi, Bluetooth, and/or cellular data) and convey location information to a server system over wireless computer networks." Dkt. No. 37 pp 21-21 (quoting from the Complaint, which in turn quotes the prosecution history). This argument was used before the USPTO to overcome a § 101 rejection. Neither Panera nor Lowes directly attack this argument. At most, they rely on the *ex parte* nature of patent prosecution to discredit the prosecution history and reurge that the asserted claims lack an inventive concept because they are directed to abstract concepts achieved by generic and conventional devices.

Simply because a claim recites conventional devices does not automatically lead to the conclusion that the conventional devices cannot be used in an unconventional way. *Enfish*, 822 F.3d 1327, 1338 (Fed. Cir. 2016) ("[W]e are not persuaded that the invention's ability to run on a general-purpose computer dooms the claims."). Recognizing the limitations on the court's ability to review evidence outside of the complaint at this stage, the defendants have not presented evidence to rebut Tiare's claim that the patents in suit achieve an unconventional result. For these reasons, the motions must be denied.

## V.     Conclusion

For the reasons discussed above, it is the **RECOMMENDED** that the motions to dismiss, **Dkt. Nos. 19 & 30**, be **DENIED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report **by not later than March 27, 2023** bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); see *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to the Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 15th day of March, 2023.**


_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE